UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
MARCEL R. DAQUAY,                   )
                                    )
        Plaintiff,                  )    C.A. No. 18-2 WES
                                    )
    v.                              )
                                    )
                                    )
GENERAL DYNAMICS ELECTRIC BOAT      )
CORPORATION,                        )
                                    )
        Defendant.                  )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This case features an allegation that over forty years ago Defendant Electric Boat Corporation ("Electric Boat") promised Plaintiff Marcel R. Daquay something in return for his help securing $850 million from the federal government. The alleged promise went unfulfilled, prompting Daquay to file suit – in August 2017 – ten years after the company terminated his employment. Electric Boat has moved to dismiss. (ECF No. 6.) Because the statute of limitations has run on Daquay's claims, the Court GRANTS Electric Boat's motion.

I.  Background

As alleged in the complaint,[1] Marcel R. Daquay began working for Electric Boat as a Quality Control Analyst in May of 1975. (Pl.'s Compl. ¶ 5, ECF No. 1-1.) In this capacity, he was occasionally asked to perform duties beyond the scope of his contractual obligations. (Id. at ¶ 6.) On these occasions, Daquay performed the requested services as directed, sometimes with and other times without the promise of additional compensation. (Id. at ¶¶ 6-7.)

In the late 1970s, it was discovered that a number of boats Electric Boat had built for the United States Navy had structural defects. (Id. at ¶ 8.) Electric Boat requested $1.5 billion from the federal government to correct the problem. (Id.) This request was promptly denied because Electric Boat was ostensibly at fault for the structural issues. (Id. at ¶ 9.) Supervisors then told Daquay that it would be "worth his while" to investigate the structural issues, and that Electric Boat would be "more than grateful" for his doing so. (Id. at ¶¶ 10-15, 22.)

Through research and testing, Daquay discovered that Electric Boat was not in fact at fault, but rather third parties had supplied low-grade steel, which was proven to be the cause of the

---

[1] When deciding a motion to dismiss, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

boats' structural issues. (Id. at ¶¶ 10-11.) Daquay never received any form of additional compensation for these services. (Id. at ¶ 16.) But Electric Boat received $850 million from the federal government after a report was submitted to Congress on December 22, 1979, proving Electric Boat was not at fault. (Id. at ¶ 12.)

Daquay continued to work for Electric Boat until August 2007, when his employment was terminated. (See id. at ¶ 5.) At the time of termination, he received only his final paycheck, which did not include any form of additional compensation. (See id. at ¶ 16.)

On August 31, 2017, Daquay brought suit to recover, inter alia, the money Electric Boat allegedly promised him for his aforementioned work in the late 1970s.

II. Discussion

Electric Boat raises a statute of limitations defense as to all counts. (Mot. to Dismiss 4); see R.I. Gen. Laws § 9-1-13(a). Daquay claims that his suit is timely because the applicable ten-year statute of limitations began to run from the termination of his employment in August of 2007, when the breach came to light. (Pl.'s Resp. to Mot. to Dismiss ("Response") 6, ECF No. 9.) Electric Boat, on the other hand, argues that the suit is untimely because the statute of limitations began to run at the time of the breach in 1979. (Mot. to Dismiss 1.) Electric Boat has the better argument.

Statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 181 (R.I. 2008) (quoting Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348-49 (1944)). Generally, in Rhode Island, "a cause of action accrues and the applicable statute of limitations begins to run at the time of injury to the aggrieved party." Hill v. R.I. State Emps.' Ret. Bd., 935 A.2d 608, 616 (R.I. 2007) (quotation marks omitted). Moreover, "neither the ignorance of a person of his right to bring an action nor the mere silence of a person liable to the action prevents the running of the statute of limitations." Swiss v. Eli Lilly & Co., 559 F. Supp. 621, 624 (D.R.I. 1982) (quoting Kenyon v. United Elec. Rys., 151 A. 5, 8 (R.I. 1930)).

There are exceptions to this rule, such as "'where a defendant conceals from a plaintiff by actual misrepresentation the existence of a cause of action,' in which case 'said cause of action is deemed to accrue at the time the plaintiff first discovers its existence.'" Waters v. Walt Disney World Co., 237 F. Supp. 2d 162, 167 (D.R.I. 2002) (quoting Kenyon, 151 A. at 8). This exception is limited, however, as "[m]ere silence or a failure to volunteer information does not constitute an 'actual misrepresentation.'" Smith v. O'Connell, 997 F. Supp. 226, 238

4

(D.R.I. 1998) (quoting Kenyon, 151 A. at 8). Rather, "[w]hat is required is 'some express representation or other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him to rely thereon to his disadvantage.'" Id. (quoting Caianiello v. Shatkin, 82 A.2d 826, 829 (R.I. 1951)).

Daquay avers that the statute of limitations began to run on his claims in 2007 when Electric Boat did not include additional compensation in his final paycheck. (Response 6.) But this is not when the alleged injury occurred and the cause of action accrued, which was when payment was allegedly due and not remitted. See Bader v. Alpine Ski Shop, Inc., 505 A.2d 1162, 1166-67 (R.I. 1986).

The time at which payment would have been due Daquay cannot be determined by recourse to contractual language. Where, as here, an alleged contract does not specify a time of performance, contract law states that performance should be completed within a reasonable time. See Thermo Electron Corp. v. Schiavone Constr. Co., 958 F.2d 1158, 1164 (1st Cir. 1992) ("Since the contract contained no specific time limits, nor any clause stating that time was 'of the essence,' [plaintiff] had a 'reasonable time' within which to perform . . . .") (emphasis omitted)); Restatement (Second) of Contracts § 33 illus. 1d (Am. Law Inst. 1981) (citations omitted) ("Where the contract calls for a single

performance such as the rendering of a service or the delivery of goods, the time for performance is a 'reasonable time.'").

Daquay alleges that, on December 22, 1979, a report was submitted to Congress that demonstrated Electric Boat was not entirely at fault for the boats' structural issues. (Compl. ¶ 12.) He further alleges that this report was "centrally based on the critical information [he] generated." (Id.) Following submission of this report, Electric Boat received $850 million from the federal government. (Id.) Based on Daquay's own rendition of the facts, he rendered services in this matter no later than December 22, 1979, as this was the date that proved Electric Boat's lack of fault. (See id.) Consequently, the additional compensation must have been due at a reasonable time following this date. See Bader, 505 A.2d at 1167 ("[P]laintiff's cause of action accrued in September 1973, the time when he could have reasonably anticipated a bonus.").

What constitutes a reasonable period to perform depends on the facts of the case. See Bushkin Assocs. v. Raytheon Co., 815 F.2d 142, 146 (1st Cir. 1987) ("[W]hen a contract is silent as to time, the term shall be a reasonable time based on all the relevant evidence."). Without determining the exact bounds of reasonableness here, the Court notes that the pleaded facts simply do not support Daquay's contention that a reasonable period for Electric Boat to pay him for services rendered in 1979 would have

lasted until August 2007. Indeed, Daquay does not supply - and the Court is unaware of - a case that finds reasonable performance twenty-seven years after services were rendered. Cf. Vulcan Auto. Equip., Ltd. v. Glob. Marine Engine & Parts, Inc., 240 F. Supp. 2d. 156, 165-66 (D.R.I. 2003) (finding sixty days a reasonable time for payment under the U.C.C.); Empire Acquisition Grp., LLC v. Atl. Mortg. Co., 35 A.3d 878, 884-85 (R.I. 2012) (finding sixty days after agreed-upon performance under contract for sale of property unreasonable).

Daquay's reliance on Friedman v. Kelly & Picerne, Inc. is misplaced. No. PB 05-1193, 2012 WL 274514 (R.I. Super. Jan. 26, 2012). There, the court tolled the statute of limitations until the plaintiff's discovery of the cause of action because the defendant took affirmative steps to conceal its existence. Id. at *7. Here, though, Daquay alleges no affirmative steps taken by Electric Boat to conceal anything. The complaint claims that supervisors told Daquay it would be "worth his while" and that Electric Boat would be "more than grateful" for his help. (Compl. ¶ 22.) But Electric Boat did nothing to disguise the fact that the company did not pay Daquay after he performed.

Because a reasonable period to remit payment under these facts ended sometime before August 2007 – likely long before then – Daquay's claims accrued at least ten years before he filed his complaint, and are therefore out of time.

III. Conclusion

For the foregoing reasons, Electric Boat's Motion to Dismiss (ECF No. 6) is GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: June 19, 2018